IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIKAR ROK, | No. 15-cv-5775-CRB |
| Plaintiff, | **ORDER DENYING MOTION TO STRIKE AND GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| IDENTIV, INC., JASON HART, and BRIAN NELSON | |
| Defendants. | |

Now pending are Defendants' Motion to Strike and three Motions to Dismiss. As explained below, the Court DENIES the Motion to Strike and GRANTS the Motions to Dismiss with leave to amend.

## I. INTRODUCTION

This matter is a proposed securities fraud class action against Defendants Identiv, Identiv's Chief Executive Officer Jason Hart, and Identiv's Chief Financial Officer Brian Nelson (collectively "Defendants"). Lead Plaintiff Thomas Cunningham brings the case on behalf of all persons who purchased Identiv's common stock between November 13, 2013, through November 30, 2015 (the "Class Period"). Cunningham filed an amended complaint alleging that the Defendants made "materially false and misleading statements and omissions with scienter" with regards to numerous public statements about Identiv's executive compensation and internal financial controls, in violation of Securities Exchange Act Section 10(b) and SEC Rule 10b-5. See Amended Compl. (dkt. 34) ("Complaint") ¶¶ 132–36.

1 Cunningham also alleges that Hart and Nelson are liable for Identiv's fraudulent conduct as
2 "controlling persons" of the company under Section 20(a) of the same act. See id. ¶ 142.

3 Defendants now collectively and individually move to dismiss the complaint, arguing
4 that Cunningham has failed to meet his heightened pleading burden to assert with
5 particularity specific facts showing any actionable material misrepresentations or omissions,
6 a strong inference of scienter as to those statements, and loss causation. See Identiv Mot.
7 (dkt. 39) ("Motion") at 1–2; Hart Mot. (dkt. 40) at 1; Nelson Mot. (dkt. 41) at 1–2.[1]

## II.   MOTION TO STRIKE

9 Identiv seeks to strike certain paragraphs and sentences in the complaint that rely on a
10 separate state court complaint, Ruggiero v. Identiv, Inc., No. HG15764795 (Cal. Super. Ct.
11 Alameda County., filed Apr. 2, 2015) (hereafter "Ruggiero complaint") as a violation of
12 Federal Rule of Civil Procedure 11(b). See Mot. at i, 10 n.11. Under Rule 11, "we do not
13 require complaints to be verified," because "[a]s the litigation progresses, and each party
14 learns more about its case and that of its opponents, some allegations fall by the wayside."
15 PAE Gov't Serv., Inc. v. MPRI, Inc., 514 F.3d 856, 859 (9th Cir. 2007). Rule 11 "deals
16 specifically with bad faith conduct." See id. Cunningham asserts that his counsel
17 "conduct[ed] an investigation of all the allegations in the Complaint," which also "contains
18 numerous corroborating factual sources for its allegations" independent of the
19 Ruggiero complaint. See Opp'n (dkt. 45) at 32. The complaint confirms that Cunningham
20 premises his "information and belief" on his counsel's "independent investigation" of
21 "Identiv's public filings with the SEC," "public reports," "economic analysis of securities
22 movements," "transcripts of Identiv's investor's calls," "interviews with former employees
23 and other potential witnesses," and "other publically available material." See compl. ¶ 2.

---

[1] The Court takes judicial notice of all twenty-three exhibits attached to the McGrath Declaration in support of Defendants' motions. See generally McGrath Decl. (dkt. 39-2). In a securities fraud action, courts must "consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). Publically available financial documents, including SEC filings and reported stock price history, are judicially noticeable on a motion to dismiss. See Metzler, 540 F.3d at 1064 n.7.

There is no indication that Cunningham's counsel acted in bad faith by referencing the Ruggiero complaint. See PAE Gov't Serv., 514 F.3d at 859. Keeping with the proposition that "[c]ourts generally disfavor motions to strike because striking is such a drastic remedy," see Freeman v. ABC Legal Serv., Inc., 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (citing Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000)), the Court hereby DENIES Defendants' motion to strike the challenged sections.

### III.     MOTIONS TO DISMISS

Securities fraud claims must meet the heightened pleading standards of Rule 9(b), requiring that "a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and of the Private Securities Litigation Reform Act: "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2010); Tellabs, 551 U.S. at 321. Courts are to dismiss any complaint that does not meet these requirements. See 15 U.S.C. § 78u-4(b)(3)(A).

Plaintiffs alleging securities fraud under Securities Exchange Act Section 10(b), 15 U.S.C. § 78j(b) (2010), and associated SEC Rule 10b-5, 17 C.F.R. § 240.10b–5(b), must plead the following elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation; (5) economic loss; and (6) loss causation (a causal connection between the material misrepresentation and the economic loss). See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005); Loos v. Immersion Corp., 762 F.3d 880, 886–87 (9th Cir. 2014).

The Court concludes that Cunningham failed to adequately plead (A) material misrepresentations as to the internal controls statements,[2] (B) a strong inference of scienter as

---

[2] However, the Court concludes that Cunningham did adequately plead that the statements related to executive compensation are material misrepresentations. Dispute of materiality "should ordinarily be left to the trier of fact." See In re Cutera Sec. Litig., 610 F.3d 1103, 1108 (9th Cir. 2010); see also Nathanson v. Polycom, Inc., 87 F. Supp. 3d 966, 973–74 (N.D. Cal. 2015).

3

to all misrepresentations, and (C) loss causation.

### A. Material Misrepresentations

Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011). These rules "prohibit only misleading and untrue statements, not statements that are incomplete." In re Rigel Pharm., Inc. Sec. Litig., 697 F.3d 869, 880 n.8 (9th Cir. 2012). Cunningham first alleges that the 2013 Form 10-K and the 2013 and 2014 Forms 10-Q—issued prior to Identiv's supposed remediation of the internal controls material weakness as announced in its 2014 10-K—are misleading because they "failed to disclose the existence of . . . the weakness related to the Company's 'entity level controls.'" See Compl. ¶ 87.[3] He alleges that although Identiv disclosed the internal controls material weakness, see, e.g., id. ¶ 34, that weakness was separate from the undisclosed entity level controls weakness that BDO identified and notified the Board of in 2015, see Compl. ¶¶ 13, 91, 112, 115. Yet the complaint does not allege with particularity that the latter material weakness was present simultaneously and distinct from the former weakness, see id. ¶ 91. Identiv affirmatively disclosed the presence of the internal controls material weakness. See e.g.,   ¶¶ 77, 81, 83, 85, 89. Even if a second entity level controls weakness existed in 2013 and/or 2014 (one that BDO did not establish until a year later), Identiv did not have an "affirmative duty" to disclose it during those years. See Matrixx, 563 U.S. at 44.

Second, Cunningham contends that Identiv misrepresented that it had remediated the internal controls weakness. See Compl. ¶¶ 91, 94, 97, 100; Opp'n at 22–23. Conversely, Identiv argues that the 2015 internal controls weakness was "distinct" from the previous one,

---

[3] Identiv defined the internal control weakness, first disclosed in the 2012 10-K and reiterated in subsequent filings in 2013 and 2014, as arising from an "insufficient review and oversight of the recording of complex and non-routine transactions." See Compl. ¶ 32. Identiv later attributed the weakness to an "insufficient number of accounting personnel with appropriate knowledge, experience or training in U.S. GAAP." See id. ¶ 34. The 2014 10-K reported remediation of the weakness, see id. ¶ 37, but the 2015 10-Q forms announce the presence of an internal control weakness, using the same language as the previous one, see id. ¶ 67. Meanwhile, the entity level controls weakness, as disclosed in the November 30, 2015, Form 8-K, refers to BDO's finding that "the Company's senior management leadership and operating style and the Board's oversight did not result in an open flow of information and communication and did not support an environment where accountability is valued." See id. ¶ 64.

4

albeit "described with similar terminology." See Mot. at 14, 16.  Cunningham so far has failed to "state with particularity the circumstances," see Fed. R. Civ. P. 9(b), showing that the entity level controls weakness existed simultaneously with the internal controls weakness in 2013 and 2014 .  He also failed to "state with particularity all facts" forming the basis of his belief, see 15 U.S.C. § 78(u)-4(b)(1)(B), that the 2015 internal controls weakness is the same as the 2013-2014 internal controls weakness that Identiv did not remediate in 2014.

### B.     Scienter

The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted" with scienter.  See id. § 78u–4(b)(2)(A); Tellabs, 551 U.S. at 321.  Cunningham cannot use Hart's and Nelson's Sarbanes-Oxley certifications on Identiv's SEC filings, see, e.g., Compl. ¶¶ 78, 80, 82, 84, 86–88, to show a strong inference of scienter.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1003–04 (9th Cir. 2009) (declaring that "[b]oilerplate language in a corporation's 10-K form, or required certifications under Sarbanes-Oxley section 302(a) . . . add nothing substantial to the scienter calculus.").

Cunningham fails to allege particularized facts that show a strong inference of scienter as to the statements regarding executive compensation that is "at least as compelling as any opposing inference" by the Defendants.  See Tellabs, 551 U.S. at 324; see, e.g., Hart Mot. at 17–18 ("sloppy management" does not give rise to an allegation that Hart knew the proxy statements were "incorrect at the time they were published.").  He also fails to allege with particularity that Hart knew of and disregarded the entity level controls weakness in 2013 or 2014 (assuming that it existed in those years), see Compl. ¶¶ 64–65, that the 2013-2014 internal controls weakness was related to the weakness that Identiv disclosed in March 2016, see, e.g., id. ¶¶ 94–95, 97–98, 100–01,  and that the Defendants acted with scienter as to this weakness (or to both weaknesses, assuming that there were in fact two).  Rather, Cunningham merely pleads conclusory assertions that the Defendants knowingly or recklessly omitted that Identiv had not actually remediated the earlier material weakness.  See, e.g., id. ¶ 92 ("extreme nature" of the control deficiency, a "complete and willing lack of care for blatant internal control deficiencies," etc.).  Conclusory assertions typically are

5

"insufficient, standing alone, to adequately allege scienter." See Zucco, 552 F.3d at 998.[4]

### C. Loss Causation

Cunningham fails to plead loss causation because he has not adequately pleaded a stock price decline for the amended FY 2014 10-K/A, and because he has not sufficiently shown a material misrepresentation that would have caused the decline, see supra Section III(A). A complaint must give the defendant "notice" of the causal connection between the material misrepresentation and the economic loss; in other words, "the complaint must allege that the defendant's share price fell significantly after the truth became known." Metzler, 540 F.3d at 1062 (internal citations omitted). While an "announcement of an [internal] investigation, without more, is insufficient to establish loss causation," see Loos, 762 F.3d at 890, such a statement becomes sufficient at the pleading stage "if the complaint also alleges a subsequent corrective disclosure by the defendant," see Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1210 (9th Cir. 2016).

Announcements of Identiv's internal investigation into the Ruggiero complaint's allegations, see, e.g., Compl. ¶¶ 105–08 (Notice of Late Filing (Form 12b-25), on May 1, 2015, and its related Form 8-K, filed on May 4, 2015), 109–111 (Notice of Late Filing, on May 18, 2015), cannot plead loss causation "standing alone and without any subsequent disclosure," see Loos, 762 F.3d at 890 n.3, absent a "subsequent corrective disclosure," see Lloyd, 811 F.3d at 1210. Cunningham does not allege any stock price drop after Identiv filed its amended 2014 10-K/A that corrected Hart's 2013 and 2014 compensation information, see Compl. ¶ 116, nor does he allege any drop after Identiv filed its late 2015 quarterly reports on March 29, 2016, admitting the presence of the internal controls material weakness, see id. ¶ 117. Without this information, for the purposes of pleading loss causation,

---

[4] The Court disregards the testimony of Confidential Witness 1 (CW1), see Compl. ¶ 53, because the complaint fails to provide CW1's specific job description and responsibility "with ample detail," see Zucco, 552 F.3d at 996. Nor does CW1 offer with particularity any evidence beyond hearsay to establish this sole witness's reliability regarding Hart's and Nelson's scienter. See id. at 995; Compl. ¶ 53. Furthermore, CW1's statements themselves are not "indicative of scienter," see Zucco, 552 F.3d at 995; they do not offer with particularity any evidence of personal knowledge that Hart and Nelson knowingly made false or misleading statements in the public filings on executive compensation and internal controls at the center of the allegations, see id.; Compl. ¶ 53.

these statements cannot serve as "subsequent corrective disclosure[s]," see Lloyd, 811 F.3d at 1210, following Identiv's May 2015 announcement of its internal investigation, see Loos, 762 F.3d at 890.

The November 30, 2018, Form 8-K disclosing the two material weaknesses that BDO identified also does not adequately allege loss causation. See Compl. ¶ 112. As Cunningham has failed to show that this disclosure is related to an actual material misrepresentation, it cannot serve to establish a "causal connection" to any economic loss. See Metzler, 540 F.3d at 1062 (requiring a complaint to show both a material misrepresentation and economic loss to establish loss causation).[5]

### D. Controlling persons claim

Cunningham also claims that "as controlling persons" of Identiv, Hart and Nelson are jointly and severally liable with Identiv for the Section 10(b) claims. See 15 U.S.C. § 78t(a) (2011); Compl. ¶ 142. To establish this claim under Securities Exchange Act Section 20(a), a plaintiff must show (1) "a primary violation of federal securities law," and (2) that the defendant exercised actual power or control over the primary violator." See Zucco, 552 F.3d at 990 (internal quotations omitted). As Cunningham has failed to adequately plead a substantive Section 10(b) violation, the Court dismisses the attendant Section 20(b) claim with leave to amend.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED.

Courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P.

---

[5] Notably, Cunningham does not plead loss causation for any of the statements preceding Identiv's May 2015 filings—specifically, for any of the 2013 and 2014 statements he considers material misrepresentations for allegedly omitting to disclose the existence of a separate material weakness other than the disclosed internal controls weakness, and for the FY 2014 10-K that announced its supposed remediation. See generally Compl. ¶¶ 102–17. The Court therefore concludes that these statements cannot adequately establish loss causation, and thus they ultimately fail to allege a Section 10(b) claim. See Dura Pharm., 544 U.S. at 341–42 (requiring material misrepresentation and loss causation to allege a Section 10(b) violation).

[6] The Court observes that of the Defendants' three motions to dismiss, only Nelson's in fact argues beyond a mere footnote for dismissing the 20(a) claim. See Nelson Mot. at 17–18; Hart Mot. at 21 n.8; see generally Mot. The Court thereby grants Nelson's motion as to all three defendants.

7

15(a)(2). Cunningham might be able cure his pleadings by alleging with particularity material misrepresentations, scienter, and loss causation. See Tellabs, 551 U.S. at 313 (noting the "[e]xacting pleading requirements" of Rule 9 and the Private Securities Litigation Reform Act).

**IT IS SO ORDERED.**

Dated: August 10, 2016

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE