1    CHRISTOPHER H. McGRATH (SB# 149129)
     chrismcgrath@paulhastings.com
2    RAYMOND W. STOCKSTILL (SB# 275228)
     beaustockstill@paulhastings.com
3    PAUL HASTINGS LLP
     695 Town Center Drive
4    Seventeenth Floor
     Costa Mesa, California  92626-1924
5    Telephone:    1(714) 668-6200
     Facsimile:    1(714) 979-1921
6
     EDWARD HAN (SB# 196924)
7    edwardhan@paulhastings.com
     PAUL HASTINGS LLP
8    55 Second Street
     Twenty-Fourth Floor
9    San Francisco, California  94105
     Telephone:    1(415) 856-7000
10   Facsimile:    1(415) 856-7100

11   *Attorneys for Defendant*
     *Identiv, Inc.*
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16   LIKAR ROK, on Behalf of Himself and All          CASE NO. 3:15-CV-05775-CRB
     Others Similarly Situated,
17                                                     **CLASS ACTION**
                         Plaintiff,
18                                                     **IDENTIV, INC.'S OPPOSITION TO**
            vs.                                        **PLAINTIFF'S MOTION FOR RELIEF**
19                                                     **PURSUANT TO FED. R. CIV. P. 60(b)**
     IDENTIV, INC.; JASON HART; and BRIAN
20   NELSON,                                           Date:      March 9, 2018
                                                       Time:      10:00 a.m.
21                       Defendants.                   Dept.:     Courtroom 6, 17th Floor
                                                       Judge:     Hon. Charles R. Breyer
22

23

24

25

26

27

28

# SUMMARY OF ARGUMENT

Pursuant to the Court's standing orders, defendant Identiv, Inc. ("Identiv" or the "Company") respectfully submits the following summary of argument.

This Court previously dismissed this action with prejudice and entered judgment in defendants' favor because, inter alia, plaintiff Thomas Cunningham's ("Plaintiff") allegations failed to (1) adequately state facts giving rise to a strong inference of intent to defraud investors and (2) sufficiently allege loss causation, two necessary elements of a securities fraud claim. Plaintiff is currently appealing that judgment to the Ninth Circuit, which has scheduled oral argument for March 13, 2018. After waiting almost 12 months following entry of the order and judgment dismissing this action with prejudice and months after the supposed "newly discovered evidence" was publicly disclosed, Plaintiff has filed the pending Motion for Relief Pursuant to Fed. R. Civ. P. 60(b) (the "Motion"). The Motion is untimely, unfounded and should be rejected.

Plaintiff's lawsuit has from the outset asserted various allegations of purported improper expense reimbursements sought and obtained by Identiv's then-CEO Jason Hart ("Hart"). Plaintiff argues that this Court's order denying Identiv's motion to dismiss (for lack of demand futility) in a separate but related derivative action included, in its discussion of allegations from that derivative action, previously undisclosed information regarding (i) the alleged details of the resignation letter of Identiv's independent registered public accounting firm, BDO USA, LLP ("BDO"), and (ii) the magnitude of expenses identified as potentially improper during the Special Committee investigation into allegations of improper expense reimbursements made in a disgruntled former employee's employment discrimination and retaliation lawsuit. Plaintiff contends that this information constitutes "newly discovered evidence" warranting vacatur of judgment under Fed. R. Civ. P. ("Rule") 60(b)(2). As this Court has repeatedly recognized, however, while such allegations might at most be relevant to a derivative action or breach of fiduciary duty claim, they do ***not*** state a claim for securities fraud. No additional information referenced in the Motion changes that outcome or alters the Court's multiple independently sufficient bases for dismissing Plaintiff's action.

1    Plaintiff's belated effort is meritless, and his Motion should be denied.[1]

2    **The Motion is untimely:**  A Rule 60(b)(2) motion "must be brought within a 'reasonable

3    time' and in any event not longer than one year after the judgment was entered."  *Ashford v.*

4    *Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam); *see also* Fed. R. Civ. P. 60(c)(1) ("A

5    motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and

6    (3) no more than a year after the entry of the judgment . . . .");  *Thompson v. Paul*, No. CIV-05-

7    0990-PHX-MHM, 2007 U.S. Dist. LEXIS 24943, at *7 (D. Ariz. Mar. 30, 2007) ("[The]

8    [p]laintiffs ignore that a Rule 60(b)(2) or (3) motion must be filed within a 'reasonable time'

9    period, not simply filed within one year of the Court's judgment");  *Kagan v. Caterpillar Tractor*

10   *Co.*, 795 F.2d 601, 610 (7th Cir. 1986) ("[T]he one-year period represents an extreme limit, and

11   the motion will be rejected as untimely if not made within a reasonable time, even though the

12   one-year period has not expired." (internal quotation marks and citation omitted)).  Accordingly,

13   even motions filed within the one-year time limit are routinely found untimely where the plaintiff

14   delayed even just a few months.  *See*, *e.g.*, *Pierce v. United States*, No. 15-cv-02811-JSC, 2017

15   U.S. Dist. LEXIS 112606, at *6 (N.D. Cal. July 19, 2017) (delay of less than three months after

16   dismissal was not reasonable and "beyond that which courts generally excuse").

17       Whether a motion was filed within a "reasonable time" depends on the facts of each case

18   and turns on such considerations as "the interest in finality, the reason for delay, the practical

19   ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."

20   *Ashford*, 657 F.2d at 1055.  Here, Plaintiff filed the Motion months after the supposed "newly

21   discovered evidence" was disclosed and on the eve of the one-year cutoff.  Plaintiff offers no

22   explanation for his delay, instead asserting that the Motion is timely because it was filed within

23   one year of judgment.  Meanwhile, Plaintiff's unreasonable delay prejudices defendants, as

24   Plaintiff's appeal in the Ninth Circuit has already been fully briefed and this Motion will be heard

---

[1] As a threshold matter, insofar as Plaintiff is requesting that this Court grant this Motion in the first instance, prior to any remand by the Ninth Circuit Court of Appeals, it is procedurally improper.  This Court lacks jurisdiction because Plaintiff filed an appeal, and the proper procedure is for Plaintiff to first ask this Court to entertain the Rule 60(b)(2) Motion, then if this Court indicates it will entertain or grant the Motion, then Plaintiff must file a motion with the Ninth Circuit Court of Appeals seeking remand, so that the Motion can then be heard.  *Davis v. Yageo Corp.*, 481 F.3d 661, 685 (9th Cir. 2007).

1   just two business days before oral argument on the appeal, and undermines the interest in finality

2   of this Court's dismissal and judgment.  Accordingly, the Motion is untimely and should be

3   denied on that basis.

4       **The "newly discovered evidence" will not alter the disposition of this case:**  "Relief

5   under Rule 60(b)(2) [based upon newly discovered evidence] is an extraordinary remedy that is to

6   be granted only in exceptional circumstances."  *IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. CV

7   13-9026-GW(AJWx), 2015 WL 12828053, at *2 (C.D. Cal. May 28, 2015) (alteration in original)

8   (quoting *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 n.45 (E.D. Cal.

9   2001)).  Plaintiff must establish that the "newly discovered evidence" was of such magnitude that

10  production of it earlier would have been likely to change the disposition of the case.  *Bien v.*

11  *LifeLock Inc.*, No. CV-14-00416-PHX-SRB, 2015 WL 12836019, at *2 (D. Ariz. Sept. 18, 2015),

12  *aff'd sub nom. In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947 (9th Cir. 2017).  That means the

13  "[n]ewly discovered evidence must be material and cannot be merely cumulative or impeaching,"

14  and that Plaintiff must show the new information "would probably produce a different result."

15  *Arnett Facial Reconstr. Courses, Inc. v. Patterson Dental Supply, Inc.*, No. CV 11-06929 CBM

16  (Ex), 2013 WL 12246259, at *2, *4 (C.D. Cal. Apr. 8, 2013).  In the case of a dismissal for

17  failure to state a claim, Plaintiff must show that the newly discovered evidence would cure the

18  deficiencies identified by the Court and defeat a motion to dismiss.  *Prosterman v. Am. Airlines,*

19  *Inc.*, No. 16-cv-02017-MMC, 2017 WL 6759412, at *2-3 (N.D. Cal. Oct. 5, 2017).

20      In order to change the disposition of this case, Plaintiff must establish that the "newly

21  discovered evidence" would alter the Court's holdings regarding both scienter and loss causation.

22  The "newly discovered evidence" changes the analysis and holdings regarding neither of those

23  elements, so the Motion should be denied.

24      With regard to scienter, the alleged details of BDO's resignation letter only further

25  confirm the fact (and the Court's holding) that BDO's resignation related to the Special

26  Committee investigation in 2015 and did not indicate or reveal any falsity in or intent to mislead

27  the market regarding the statement of Hart's 2013-2014 executive compensation in three earlier

28  proxy statements.  The alleged details of the resignation letter are cumulative to Plaintiff's

1   pleadings, and in any event, would not alter the Court's analysis and holdings concerning

2   scienter, as they do not relate to the earlier proxy statements in question, but instead relate to a

3   subsequent Special Committee investigation.  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir.

4   2001).  Moreover, the magnitude of expenses identified as potentially improper during the Special

5   Committee investigation also would have no impact on the Court's analysis.  Plaintiff provides no

6   authority or explanation for how that detail would support scienter, and continues to conflate the

7   alleged submission of inappropriate expenses for reimbursement with the (utterly absent)

8   requisite intent to deceive investors in the Company's public filings.  In sum, the Motion fails to

9   explain or even argue how the "newly discovered evidence" would alter the Court's

10  comprehensive assessment that Plaintiff demonstrated no compelling inference of scienter to

11  commit securities fraud.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

12          With regard to loss causation, Plaintiff's argument that some additional information about

13  BDO's resignation letter first made public by this Court's order in the derivative case in October

14  2017 somehow alters what the market knew and how it reacted to the November 30, 2015

15  announcement of BDO's resignation is self-refuting.  Loss causation turns on when the truth is

16  revealed to the market, and thus is based on what the market knew as of the date on which the

17  plaintiff argues the fraud was supposedly revealed – here, in 2015.  As this Court earlier

18  determined, nothing about the Company's November 30, 2015 Form 8-K revealed the existence

19  of fraud or the outcome of the Special Committee's investigation.  Thus, nothing possibly

20  revealed by this Court's order two years later in October 2017 can change for loss causation

21  purposes the information disseminated to the market about Identiv in November 2015 or the

22  contemporaneous share price reaction (if any) to such announcement.  Those are historical facts

23  which cannot be altered.  Moreover, the Motion ignores this Court's holding that BDO's

24  resignation in no way related to an actual material misrepresentation.  In fact, BDO's resignation

25  was entirely silent as to the proxy statements and Hart's reported compensation.  Significantly,

26  BDO never withdrew its approval of the prior audited Identiv financial statements and consented

27  to their incorporation by reference into subsequent SEC filings.

28

1    Identiv thus respectfully requests this Court decline to entertain the Motion and/or deny

2    the Motion in its entirety.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Page

I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND................................... 1

    A.     The Executive Compensation Statements.................................................. 1

    B.     The *Ruggiero* Complaint and Identiv's Special Committee Investigation ............. 1

    C.     BDO Resignation and Subsequent SEC Filings ...................................... 1

    D.     Plaintiff's Amended Complaints and the Court's Dismissals and Judgment ......... 2

    E.     The "Newly Discovered Evidence" – Court's Order Denying Motion to
         Dismiss in *Oswald* Derivative Action...................................................... 3

II.    LEGAL STANDARD.............................................................................. 4

III.   PLAINTIFF'S MOTION SHOULD BE DENIED ............................................ 5

    A.     The Motion Is Procedurally Deficient.................................................... 5

    B.     The Motion Is Untimely and Should Therefore Be Denied................................ 5

    C.     The "Newly Discovered Evidence" Plaintiff Describes Would Not Alter
         the Disposition of this Case .................................................................. 7

         1.     The "Newly Discovered Evidence" Does Not Support a Strong
              Inference of Scienter, as It Has No Bearing on the Securities Fraud
              Plaintiff Alleged ......................................................................... 8

         2.     The "Newly Discovered Evidence" Cannot Establish Loss
              Causation, as the Information Available to the Market at the Time
              of the Alleged Corrective Disclosures Has Not Changed........................ 12

IV.    CONCLUSION.................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnett Facial Reconstr. Courses, Inc. v. Patterson Dental Supply, Inc.*,
   No. CV 11-06929 CBM (Ex), 2013 WL 12246259 (C.D. Cal. Apr. 8, 2013)......................4, 10

*Ashford v. Steuart*,
   657 F.2d 1053 (9th Cir. 1981)................................................................................................5, 6

*Ass'n of Irritated Residents v. C & R Vanderham Dairy*,
   435 F. Supp. 2d 1078 (E.D. Cal. 2006).....................................................................................8

*Bien v. LifeLock Inc.*,
   No. CV-14-00416-PHX-SRB, 2015 WL 12836019 (D. Ariz. Sept. 18, 2015) .........................4

*Bowie v. Maddox*,
   677 F. Supp. 2d 276 (D.D.C. 2010) ..........................................................................................6

*Caruso v. Wash. State Bar Ass'n*,
   No. C17-00003RSM, 2017 WL 3236606 (W.D. Wash. July 31, 2017) .....................................5

*Davis v. Yageo Corp.*,
   481 F.3d 661 (9th Cir. 2007).....................................................................................................5

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ..................................................................................................................8

*Dytch v. Yoon*,
   No. C 10-02915 MEJ, 2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ..........................................8

*Gould Entm't v. Bordo*,
   107 F.R.D. 308 (S.D.N.Y. 1985) ...............................................................................................6

*Henriquez v. Astrue*,
   499 F. Supp. 2d 55 (D. Mass. 2007) .........................................................................................6

*IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*,
   No. CV 13-9026-GW(AJWx), 2015 WL 12828053 (C.D. Cal. May 28, 2015)........................5

*Kagan v. Caterpillar Tractor Co.*,
   795 F.2d 601 (7th Cir. 1986)......................................................................................................6

*Limon v. Double Eagle Marine, L.L.C.*,
   771 F. Supp. 2d 672 (S.D. Tex. 2011) .......................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014).................................................................................8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008).............................................................................12

*Nevada v. Watkins*,
  914 F.2d 1545 (9th Cir. 1990)...............................................................................8

*Oswald v. Identiv, Inc.*,
  No. 16-cv-00241-CRB, 2017 WL 4877423 (N.D. Cal. Oct. 27, 2017) ............................3, 4, 9

*Pierce v. United States*,
  No. 15-cv-02811-JSC, 2017 U.S. Dist. LEXIS 112606 (N.D. Cal. July 19, 2017)...................6

*Prosterman v. Am. Airlines, Inc.*,
  No. 16-cv-02017-MMC, 2017 WL 6759412 (N.D. Cal. Oct. 5, 2017) .....................................4

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001).................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................12

*Thompson v. Paul*,
  No. CIV-05-0990-PHX-MHM, 2007 U.S. Dist. LEXIS 24943 (D. Ariz. Mar. 30, 2007) .....6, 7

*United States v. Theodorovich*,
  102 F.R.D. 587 (D.D.C. 1984)................................................................................6

**Other Authorities**

Fed. R. Civ. P. 60 .................................................................................................5

I.      **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

    A.      **The Executive Compensation Statements**

Identiv filed its preliminary proxy for 2013 with the SEC on April 18, 2014 (the "2013 Preliminary Proxy"). (Dkt. 55 (Plaintiff's Second Amended Class Action Complaint ("SAC")) ¶ 95; Dkt. 39-2 at Ex. 21.) Identiv then filed its definitive proxy for 2013 with the SEC on April 28, 2014 (the "2013 Definitive Proxy"). (SAC ¶ 95; Dkt. 39-2 at Ex. 22.) Among other information included, both stated Hart's compensation for 2013 totaled $250,056, of which $56 was categorized "All Other Compensation." (SAC ¶ 96; Dkt. 39-2 at Ex. 21 at 55, Ex. 22 at 56.) Identiv filed its preliminary proxy for 2014 with the SEC on April 17, 2015 (the "2014 Proxy," collectively with the 2013 Preliminary Proxy and the 2013 Definitive Proxy, the "Proxy Statements"). (SAC ¶ 95; Dkt. 39-2 at Ex. 23.) Among other information included, the 2014 Proxy reported more than $3.5 million in total compensation for Hart in 2014, of which $17,004 was categorized "All Other Compensation." (SAC ¶ 98; Dkt. 39-2 at Ex. 23 at 42.)

Those statements of Hart's 2013 and 2014 "All Other Compensation" in the Proxy Statements (the "Executive Compensation Statements") are the only alleged misrepresentations at issue here. (*See* Section III.C., *infra*.)

    B.      **The *Ruggiero* Complaint and Identiv's Special Committee Investigation**

Plaintiff relied heavily on a wrongful termination and employment discrimination lawsuit filed on April 2, 2015 by a disgruntled former employee, Ana Ruggiero ("Ruggiero"), whose complaint (the "*Ruggiero* Complaint") raised allegations that Hart had improperly submitted personal expenses for reimbursement in 2013 and 2014. (SAC ¶¶ 11, 59-64, 67-69, 71-79.) Identiv subsequently disclosed the *Ruggiero* Complaint and further disclosed that a special committee was formed to investigate the allegations with the help of independent counsel. (*Id*. at ¶¶ 86, 128; Dkt. 57 at 2; Dkt. 57-2 at Ex. 8 at Part III.) Identiv's share price dropped only 1.4% on the day after this disclosure. (SAC ¶ 131; Dkt. 57 at 2; Dkt. 57-2 at Ex. 17.)

    C.      **BDO Resignation and Subsequent SEC Filings**

On November 30, 2015, Identiv disclosed that BDO had resigned as Identiv's independent registered public accounting firm. (SAC ¶ 88; Dkt. 57 at 2; Dkt. 57-2 at Ex. 14 at Item 4.01.)

1   BDO had advised that it was unwilling to be associated with Identiv's 2015 financial statements,

2   but it notably did not similarly take issue with Identiv's prior financial statements it had audited.

3   (Dkt. 57 at 2; Dkt. 57-2 at Ex. 14 at Item 4.01.)  In fact, there has been no adverse opinion or

4   disclaimer of opinion related to the audited financial statements for 2013 and 2014, (Dkt. 57 at 2;

5   Dkt. 57-2 at Ex. 14 at Item 4.01), and BDO has repeatedly consented to its audit report of Identiv's

6   2014 financial statements being incorporated by reference in Identiv's later SEC filings, (Dkt. 57

7   at 2-3; Dkt. 57-2 at Ex. 16 at Ex. 23.2, Ex. 20 at Ex. 23.2).  Instead, BDO only indicated that it

8   disagreed with the scope and remediation of the 2015 investigation of the *Ruggiero* Complaint and

9   that it believed there were two material weaknesses with Identiv's internal controls over financial

10  reporting in 2015, only the first of which is alleged to be relevant in this lawsuit.  (Dkt. 57 at 3;

11  Dkt. 57-2 at Ex. 14 at Item 4.01; SAC ¶ 135.)  Specifically, BDO identified a material weakness

12  related to Identiv's "entity level controls," determining that "with respect to the results of the

13  special investigation undertaken by the Special Committee during 2015, the Company's senior

14  management leadership and operating style and the Board's oversight did not result in an open

15  flow of information and communication and did not support an environment where accountability

16  is valued."  (Dkt. 57 at 2; Dkt. 57-2 at Ex. 14 at Item 4.01; SAC ¶ 135.)

17          On December 18, 2015, Identiv filed an amendment to its annual report for 2014 (the "FY

18  2014 10-K/A").  (SAC ¶ 141; Dkt. 57 at 3; Dkt. 57-2 at Ex. 15.)  Therein, Identiv increased

19  Hart's reported "All Other Compensation" line by $13,147 for 2013 and by $97,868 for 2014.

20  (SAC ¶¶ 97, 99, 141-42; Dkt. 57 at 3; Dkt. 57-2 at Ex. 15 at 9.)  Those increases reflected

21  payments to Hart of "previously reimbursed expenses . . . as to which the Company subsequently

22  determined should not have been reimbursed either because such expenses were not consistent

23  with the Company's expense guidelines and policies or because insufficient documentation was

24  provided to support such expense reimbursements."  (SAC ¶ 142; Dkt. 57 at 3; Dkt. 57-2 at Ex.

25  15 at 9.)  Identiv's share price ***increased*** after that disclosure.  (Dkt. 57 at 3; Dkt. 57-2 at Ex. 17.)

26          **D.      Plaintiff's Amended Complaints and the Court's Dismissals and**
                       **Judgment**
27
28          Plaintiff filed an Amended Class Action Complaint for Violations of the Federal

1   Securities Laws ("FAC") on May 3, 2016.  (Dkt. 34.)  Defendants Identiv, Hart, and Brian Nelson

2   ("Nelson") (collectively, "Defendants") filed motions to dismiss the FAC on June 6, 2016.

3   (Dkt. 39-41.)  On August 10, 2016, the Court granted the motions to dismiss on nearly all

4   grounds asserted by Defendants, but permitted Plaintiff leave to amend.  (Dkt. 52.)

5         Plaintiff filed the SAC on September 12, 2016.  Defendants filed motions to dismiss the

6   SAC on October 10, 2016.  (Dkt. 57-59.)  On January 4, 2017, the Court granted the motions to

7   dismiss on all grounds asserted by Defendants, issuing a 37-page opinion and order dismissing

8   the SAC with prejudice.  (Dkt. 73 (the "Dismissal Order").)  The Court recognized the distinction

9   between allegations of improper expense reimbursements by Hart and the securities fraud

10  Plaintiff alleged, holding, among other things, that the allegations of improper expense

11  reimbursements "might support a derivative shareholder suit, a state law suit for a breach of

12  fiduciary duty, or Ruggiero's state law retaliation suit, but they do not provide the necessary

13  scienter in a securities fraud case." (*Id*. at 24.)  The Court also determined that Plaintiff failed to

14  plead loss causation.  (*Id*. at 36.)  Consistent with the Dismissal Order, the Court also entered

15  judgment for Defendants on January 4, 2017.  (Dkt. 74.)

16        **E.      The "Newly Discovered Evidence" – Court's Order Denying Motion to**
                  **Dismiss in *Oswald* Derivative Action**
17

18        Concurrent with this action, a separate but related derivative action arising out of the

19  *Ruggiero* Complaint's allegations that Hart sought and obtained improper expense

20  reimbursements and allegations that Identiv's investigation and remedial actions in response

21  thereto were insufficient has also been pending before this Court, entitled *Oswald v. Identiv, Inc.,*

22  *et al.*, Case No. 3:16-cv-00241-CRB (N.D. Cal. filed Jan. 14, 2016) (the "*Oswald* Derivative

23  Action").  Relevant to the instant Motion, on October 27, 2017, the Court issued an order denying

24  Identiv's motion to dismiss (for lack of demand futility) the second amended complaint in the

25  *Oswald* Derivative Action (the "Order").  *See Oswald v. Identiv, Inc.*, No. 16-cv-00241-CRB,

26  2017 WL 4877423 (N.D. Cal. Oct. 27, 2017).

27        The Order in the *Oswald* Derivative Action forms the basis for the instant Motion, which

28  Plaintiff filed on January 3, 2018.  Plaintiff argues that Order included previously undisclosed

1   information regarding (i) the alleged details of BDO's resignation letter, and (ii) the magnitude of

2   expenses identified as potentially improper during the Special Committee investigation.  (MPA 5,

3   7-8, 10-11.)  Plaintiff contends that this information is "newly discovered evidence" that would

4   alter the disposition of this case, warranting relief under Rule 60(b)(2).  (*Id.* at 5.)  Notably, the

5   Order denying the motion to dismiss in the *Oswald* Derivative Action specifically recognized that

6   the present case and the derivative case "involved the same facts" but the allegations did not

7   support a securities fraud claim.  *See Oswald*, 2017 WL 4877423, at *1 n.2.

8   **II.     LEGAL STANDARD**

9          A plaintiff is not entitled to relief under Rule 60(b)(2) to set aside a judgment on the

10  grounds of newly discovered evidence unless he "satisf[ies] a three-part test, presenting newly

11  discovered evidence of facts that: '(1) existed at the time of trial; (2) could not have been

12  discovered through due diligence, and (3) was "of such magnitude that production of it earlier

13  would have been likely to change the disposition of the case."'"  *Bien v. LifeLock Inc.*, No.

14  CV-14-00416-PHX-SRB, 2015 WL 12836019, at *2 (D. Ariz. Sept. 18, 2015) (quoting *Jones v.*

15  *Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990)) (denying plaintiff shareholders' motion for

16  relief under Section 60(b)(2) to set aside the court's dismissal of a securities fraud class action,

17  reasoning the plaintiffs failed to meet their burden to show the new evidence would have been

18  likely to change the disposition of the case), *aff'd sub nom. In re LifeLock, Inc. Sec. Litig.*, 690 F.

19  App'x 947 (9th Cir. 2017).  With regard to the third element of this test, "[n]ewly discovered

20  evidence must be material and cannot be merely cumulative or impeaching," and the plaintiff

21  must show the new information "would probably produce a different result."  *Arnett Facial*

22  *Reconstr. Courses, Inc. v. Patterson Dental Supply, Inc.*, No. CV 11-06929 CBM (Ex), 2013 WL

23  12246259, at *2, *4 (C.D. Cal. Apr. 8, 2013).  In the case of a dismissal for failure to state a

24  claim, Plaintiff must show that the newly discovered evidence would cure the deficiencies

25  identified by the Court and defeat a motion to dismiss.  *Prosterman v. Am. Airlines, Inc.*, No.

26  16-cv-02017-MMC, 2017 WL 6759412, at *2-3 (N.D. Cal. Oct. 5, 2017).

27         Courts routinely deny such motions, as "[r]elief under Rule 60(b)(2) [based upon newly

28  discovered evidence] is an ***extraordinary remedy*** that is to be granted only in ***exceptional***

1  *circumstances*." *IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. CV 13-9026-GW(AJWx), 2015

2  WL 12828053, at *2 (C.D. Cal. May 28, 2015) (second alteration in original) (emphasis added)

3  (quoting *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 n.45 (E.D. Cal.

4  2001)); *see also id.* ("Relief under Rule 60 is to be used sparingly . . . ." (internal quotation marks

5  and citation omitted)); *Caruso v. Wash. State Bar Ass'n*, No. C17-00003RSM, 2017 WL

6  3236606, at *1 (W.D. Wash. July 31, 2017) (analyzing requested relief based on newly

7  discovered evidence under Rule 60(b)(2) and holding that "[v]acating a prior judgment under . . .

8  Rule 60 is an 'extraordinary remedy, to be used sparingly in the interests of finality and

9  conservation of judicial resources'" (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.

10  2003))).

11        Plaintiff's Motion fails to overcome this exacting standard and should be denied.

12  **III.**    **PLAINTIFF'S MOTION SHOULD BE DENIED**

13        **A.**    **The Motion Is Procedurally Deficient**

14        "Once an appeal is filed, the district court no longer has jurisdiction to consider motions to

15  vacate judgment." *Davis v. Yageo Corp.*, 481 F.3d 661, 685 (9th Cir. 2007).  At that point, the

16  Court may only entertain a Rule 60(b) motion "if the movant follows a certain procedure, which

17  is to 'ask the district court whether it wishes to entertain the motion, or to grant it, and then move

18  [the court of appeals], if appropriate, for remand of the case.'" *Id.* (quoting *Gould v. Mut. Life*

19  *Ins. Co. of N.Y.*, 790 F.2d 769, 772 (9th Cir. 1986)).  Accordingly, insofar as Plaintiff requests

20  that this Court grant the Motion in the first instance, (*see* MPA 13; Proposed Order), the Motion

21  is procedurally deficient and should be rejected.

22        **B.**    **The Motion Is Untimely and Should Therefore Be Denied**

23        Plaintiff's conclusory assertion that his Motion is timely simply because he brought it

24  within one year after entry of judgment misstates the law.  (MPA 5, 6 n.3.)  In fact, a Rule

25  60(b)(2) motion "must be brought within a 'reasonable time' and in any event not longer than one

26  year after the judgment was entered." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)

27  (per curiam); *see also* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within

28  a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the

1  judgment . . . ."); *Thompson v. Paul*, No. CIV-05-0990-PHX-MHM, 2007 U.S. Dist. LEXIS

2  24943, at *7 (D. Ariz. Mar. 30, 2007) ("[The] [p]laintiffs ignore that a Rule 60(b)(2) or (3)

3  motion must be filed within a 'reasonable time' period, not simply filed within one year of the

4  Court's judgment"); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) ("[T]he

5  one-year period represents an extreme limit, and the motion will be rejected as untimely if not

6  made within a reasonable time, even though the one-year period has not expired." (internal

7  quotation marks and citation omitted)).  Accordingly, courts routinely find such motions untimely

8  notwithstanding the fact the plaintiffs delayed only a few months after discovering the grounds

9  for the motions and filed within the one-year period.  *See, e.g.*, *Pierce v. United States*, No.

10  15-cv-02811-JSC, 2017 U.S. Dist. LEXIS 112606, at *6 (N.D. Cal. July 19, 2017) (delay of less

11  than three months after dismissal was not reasonable and "beyond that which courts generally

12  excuse"); *Kagan*, 795 F.2d at 610-11 (no excuse for 45-day delay between hiring new attorney

13  and filing motion or for less than four-month delay between plaintiff learning of dismissal and

14  filing motion); *Henriquez v. Astrue*, 499 F. Supp. 2d 55, 57 (D. Mass. 2007) (less than three-and-

15  a-half-month delay not reasonable); *Limon v. Double Eagle Marine, L.L.C.*, 771 F. Supp. 2d 672,

16  678 (S.D. Tex. 2011) (less than four-month delay unreasonable); *United States v. Theodorovich*,

17  102 F.R.D. 587, 589 (D.D.C. 1984) (four-month delay unreasonable).[2]  To determine whether a

18  Rule 60(b)(2) motion was filed within a "reasonable time," the Court must look to the facts of

19  each case and evaluate such considerations as "the interest in finality, the reason for delay, the

20  practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other

21  parties."  *Ashford*, 657 F.2d at 1055.  Under this applicable standard, the Motion here is untimely.

22        Plaintiff waited until 8:52 p.m. on January 3, 2018, the literal eve of the one-year cutoff

23  and 68 days after the purported "newly discovered evidence" was publicly filed on October 27,

24  2017, to bring this Motion.  Plaintiff proffers no reason whatsoever for this delay of more than

---

25  [2] Courts are especially critical of motions, like Plaintiff's here, filed just before the one-year
26  cutoff.  *See, e.g.*, *Thompson*, 2007 U.S. Dist. LEXIS 24943, at *7 (emphasizing motion filed on
   "the one-year anniversary" of dismissal); *Gould Entm't v. Bordo*, 107 F.R.D. 308, 311 (S.D.N.Y.
27  1985) (motion filed "just two days short of the absolute one year deadline," after unexplained
   four to five month delay, was unreasonable); *Bowie v. Maddox*, 677 F. Supp. 2d 276, 282, 284
28  (D.D.C. 2010) (denying motion where the plaintiff filed "with little over an hour before the one-
   year time limit ran out" and "did not adequately justify his delay").

1   two months (offering only a single sentence asserting the Motion is timely because it was filed

2   within one year of judgment), a damning omission.  *See Thompson*, 2007 U.S. Dist. LEXIS

3   24943, at *7-8 ("[The] [p]laintiffs offer no persuasive argument justifying the delay; rather [the]

4   [p]laintiffs assert only that they complied with the one year deadline. . . . [The] [p]laintiffs [sic]

5   failure to articulate any reason for the near six-month delay . . . is detrimental to [their] request to

6   set aside the Court's judgment now.").  Meanwhile, Plaintiff's appeal of this matter has been fully

7   briefed, and oral argument is scheduled to proceed on March 13, 2018 – a mere two business days

8   following the March 9, 2018 hearing date on this Motion.  Defendants will therefore be

9   prejudiced, as Plaintiff seeks to vacate the judgment and nullify his own appeal after Defendants

10  will have expended substantial time and resources briefing and preparing for oral argument on the

11  appeal.  Plaintiff cannot claim the timing of the "newly discovered evidence" necessitated these

12  circumstances, as that Order was publicly filed on October 27, 2017.  Additionally, the interest in

13  finality favors denial of the Motion, rather than permitting Plaintiff yet another bite at the apple

14  (which would mean another round of motions to dismiss, presumably followed by another appeal,

15  involving re-briefing the issues already briefed).

16      **C.      The "Newly Discovered Evidence" Plaintiff Describes Would Not Alter the
                  Disposition of this Case**

17          The only challenged statements at issue here are statements of Hart's executive

18  compensation for 2013 and 2014 in three proxy statements filed publicly with the SEC on April

19  18 and 28, 2014 and April 17, 2015 (*i.e.*, the Executive Compensation Statements), all of which

20  pre-dated the Special Committee's investigation and BDO's resignation.[3]  Plaintiff alleged that

21  _____

22  [3] The SAC alleged two categories of purported misrepresentations:  (1) the Executive
    Compensation Statements; and (2) quarterly and annual reports filed publicly with the SEC for

23  periods in 2013 and 2014, which Plaintiff alleged failed to disclose purported entity level internal
    controls weaknesses allegedly enabling improper expense reimbursements (the "Entity Level

24  Controls Weakness Statements").  (*See* Dismissal Order 9.)  In its reasoned and thorough decision
    granting Defendants' motions to dismiss the SAC, the Court held that the SAC failed to

25  sufficiently allege a material misrepresentation as to the Entity Level Controls Weakness
    Statements and failed to sufficiently allege scienter and loss causation as to either the Executive

26  Compensation Statements or the Entity Level Controls Weakness Statements.  (*Id*. at 17, 29, 36.)
    In his Motion, Plaintiff focuses solely on the Executive Compensation Statements, abandoning

27  the Entity Level Controls Weakness Statements (he similarly jettisoned them on appeal).  (*See*
    MPA 3 (describing only Court's decisions as to the Executive Compensation Statements); *see*

28  *also generally id.* (making no argument that the "newly discovered evidence" would change
    Court's holding regarding material misrepresentation as to the Entity Level Controls Weakness

1  those were material misrepresentations because the "All Other Compensation" item for Hart for

2  2013 and 2014 initially reported in the three proxy statements was adjusted in Identiv's FY 2014

3  10-K/A filed December 18, 2015 to reflect previously reimbursed expenses "the Company

4  subsequently determined should not have been reimbursed" because they "were not consistent

5  with the Company's expense guidelines and policies or because insufficient documentation was

6  provided." (SAC ¶¶ 96-99.) In dismissing the case, the Court held, inter alia, the SAC failed to

7  allege scienter and loss causation. (Dismissal Order 29, 36.) In order to change the disposition of

8  this case, the "newly discovered evidence" would have to reverse the Court's holdings as to *both*

9  scienter *and* loss causation for the Executive Compensation Statements, since the failure to plead

10 either of those necessary elements is fatal to the claim. *Dura Pharm., Inc. v. Broudo*, 544 U.S.

11 336, 341-42 (2005); *Loos v. Immersion Corp.*, 762 F.3d 880, 886-87, 891 (9th Cir. 2014), *as*

12 *amended* (Sept. 11, 2014).

13      However, the "newly discovered evidence" would not alter the analysis or outcome of

14 either issue. The Motion should therefore be denied.

15      **1.    The "Newly Discovered Evidence" Does Not Support a Strong**
        **Inference of Scienter, as It Has No Bearing on the Securities Fraud**
16      **Plaintiff Alleged**

17      The Court's detailed analysis examined all of the SAC's various scienter allegations and

18 considerations individually and holistically, holding that each failed to support scienter,

19 (Dismissal Order 17-29), before evaluating them collectively and concluding: "Looking at all of

20 the scienter allegations together . . . the SAC does not adequately plead a contemporaneous intent

---

21 Statements, which would be necessary to change the disposition as to those statements).) Plaintiff
22 has thus waived the issue and cannot raise it for the first time in reply. *Nevada v. Watkins*, 914
   F.2d 1545, 1560 (9th Cir. 1990) (holding parties "cannot raise a new issue for the first time in
23 their reply briefs" (internal quotation marks and citation omitted)); *Dytch v. Yoon*, No. C 10-
   02915 MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) ("It is improper for a moving party
24 to introduce new facts or different legal arguments in the reply brief than those presented in the
   moving papers." (internal quotation marks and citation omitted) (citing cases)); *see also Ass'n of*
25 *Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It
   is inappropriate to consider arguments raised for the first time in a reply brief."). Even if he had
26 raised the issue in his Motion, the "newly discovered evidence" would not change the Court's
   analysis or disposition as to the Entity Level Controls Weakness Statements for the same reasons
27 as detailed herein, and for the additional reason that Plaintiff does not even attempt to show, and
   cannot show, that the "newly discovered evidence" would change the Court's ruling that there
28 was no material misrepresentation with respect to the Entity Level Controls Weakness
   Statements.

1    to defraud investors," (*id*. at 29).  In an effort to convince the Court to reverse its prior decision,

2    Plaintiff pulls three excerpts from disparate portions of the Court's analysis, strips them of their

3    context, and argues that the "newly discovered evidence" would address those portions and alter

4    the Court's disposition.  (MPA 9-11.)  Plaintiff is wrong.

5         Even with the "newly discovered evidence," Plaintiff's arguments suffer from the same

6    fundamental deficiency they always have:  they conflate the supposed wrongdoing the *Ruggiero*

7    Complaint and *Oswald* Derivative Action have alleged (*i.e.*, purported improper expense

8    reimbursements by Hart) with the supposed securities fraud Plaintiff alleged here (*i.e.*, the

9    purported knowing, intentional, or deliberately reckless misstatement of Hart's 2013 and 2014

10   executive compensation in the three proxy statements to investors).  As this Court knows, there is

11   a distinction between the securities fraud claims alleged here and the claims asserted elsewhere

12   that Hart purportedly sought and obtained improper reimbursements.  *See* Dismissal Order 24

13   (finding allegations "say very little about . . . Hart's or Nelson's intent to defraud investors," and

14   explaining that "[s]uch allegations might support a derivative shareholder suit, a state law suit for

15   a breach of fiduciary duty, or Ruggiero's state law retaliation suit, but they do not provide the

16   necessary scienter in a securities fraud case"); *see also Oswald*, 2017 WL 4877423, at *1 n.2

17   (noting in the *Oswald* Derivative Action that the Court had dismissed this case because the

18   allegations did not establish the necessary scienter for securities fraud).  The "newly discovered

19   evidence" consists of the alleged details of BDO's resignation letter and the alleged total amount

20   of expenses identified as potentially improper during the Special Committee investigation.  (MPA

21   5, 7-8, 10-11.)  Neither development in any way demonstrates scienter in connection with prior

22   statements Identiv made regarding executive compensation.  *Ronconi v. Larkin*, 253 F.3d 423,

23   432 (9th Cir. 2001) (allegations must establish contemporaneous scienter).

24        Plaintiff first argues that the alleged details of BDO's resignation letter would alter the

25   Court's analysis of whether BDO's resignation supports a strong inference of scienter.  (MPA 9-

26   10.)  Not so.  The Court held that "[b]ecause the BDO resignation was tied to the Special

27   Committee's 2015 investigation of the <u>Ruggiero</u> complaint, the BDO resignation did not reflect a

28   finding by BDO that Defendants made false statements in 2013 and 2014 about either an Entity

1  Level Controls Weakness or Hart's compensation.  Accordingly it is not a basis for finding

2  scienter." (Dismissal Order 26; *see also id.* at 11 ("BDO's problems with Identiv's leadership

3  were tied to the 'results of the special investigation,' not to any independent assessment BDO had

4  undertaken of 2013 or 2014 conduct.").)  The alleged details of BDO's resignation letter only

5  further confirm that BDO's problems were linked to the Special Committee investigation that

6  post-dated the Executive Compensation Statements (as do the facts that BDO never revised or

7  qualified its previous audits of Identiv's pre-2015 financials and that BDO has since repeatedly

8  consented to its audit report of Identiv's 2014 financial statements being incorporated by

9  reference in Identiv's SEC filings).  Nothing in the alleged details of BDO's after-the-fact

10  resignation letter indicates that the statements of Hart's executive compensation in the three proxy

11  statements were made with the intent to defraud investors.  Plaintiff's insistence that the alleged

12  details of BDO's letter support the inference that its resignation was a "strong, corrective measure

13  . . . to distance itself from the wrongdoing committed by the Company's senior management"

14  again belies a fundamental misunderstanding of the supposed wrongdoing (alleged inaccurate

15  reports of Hart's 2013-2014 executive compensation in proxy statements) at issue.[4]

16        Second, Plaintiff argues that the magnitude of expenses identified during the Special

17  Committee investigation as potentially improper would address the Court's finding that the

18  allegations do not indicate Hart or Nelson were aware of any manipulation of the Company's

19  financial reporting.  (MPA 10-11 (quoting Dismissal Order 19-20).)  Plaintiff cites no authority

20  and simply asserts in conclusory fashion that this "supports an inference of an intent to commit

21  securities fraud."  (*Id.*)  Plaintiff is incorrect and misses the very point of the portion of the

22  Court's Dismissal Order he selectively quotes out of context.  The Court did not base its scienter

_____

23  [4] Additionally, the details of BDO's resignation letter are essentially just an elaboration of the
   SAC's existing allegations, based on Identiv's SEC filing, that BDO "disagree[d] with the scope

24  and the remediation of the special investigation" and was "unwilling to be associated with the
   consolidated financial statements prepared by management for any of the fiscal periods within

25  2015."  (SAC ¶ 88 (internal quotation marks omitted).)  Where the SAC already alleged that BDO
   disagreed with the scope and remediation of the Special Committee investigation, (*id.*), the

26  alleged language of BDO's letter simply adds detail and likewise explains that BDO requested
   additional investigation be done and that when Identiv declined, BDO resigned because it

27  consequently disagreed with the scope and remediation of the investigation, (MPA 7-8).
   Consequently, this "newly discovered evidence" is cumulative and cannot form the basis for

28  relief under Rule 60(b)(2).  *Arnett Facial Reconstr. Courses*, 2013 WL 12246259, at *4.

1   holding on any notion that the amount of expenses in question was or was not sufficiently

2   substantial.  Instead, the Court was responding to Plaintiff's argument that it would be absurd to

3   suggest Hart was unaware he allegedly sought improper reimbursements, and held:  "While it

4   might well be absurd to suggest that Hart was unaware that he repeatedly sought improper

5   reimbursements for personal items, or that Nelson was unaware that he repeatedly allowed such

6   reimbursements, it is quite another thing to suggest that both were obviously aware of 'the

7   manipulation of the Company's financial reporting to conceal [the] misappropriation,' . . . which

8   is the only item on Cunningham's list that is relevant to securities fraud."  (Dismissal Order 19-20

9   (alteration in original).)  The point is that regardless of whether Hart or Nelson were aware of

10  allegedly improper expense reimbursements, Plaintiff's allegations simply do not indicate any

11  awareness that Hart's executive compensation disclosures in the three proxy statements might be

12  inaccurate.

13        Third, Plaintiff similarly argues that the magnitude of expenses identified during the

14  Special Committee investigation would address the Court's comments "that busy executives are

15  sometimes too busy to painstakingly gather, organize, and submit their receipts," and that the

16  allegations merely "show a CEO impatient to be reimbursed for personal expenses without

17  following the necessary processes, and a CFO more interested in granting reimbursements than in

18  following the necessary processes."  (Dismissal Order 24-25 (quoted at MPA 11).)  Plaintiff again

19  misses the point of the analysis he selectively quotes out of context.  The Court's comments were

20  not driven in any way by the alleged amount of expenses in question.  Those comments were in

21  the context of the Court explaining how CW1's and the *Ruggiero* Complaint's allegations, even if

22  they could be relied upon, are not indicative of any intent to mislead investors (*i.e.*, securities

23  fraud).  (*Id*. ("The other problem with the allegations based on the Ruggiero complaint is that they

24  say very little about either entity level controls or Hart's or Nelson's intent to defraud

25  investors.").)

26        Finally, even if the "newly discovered evidence" would alter one or more of the three

27  discrete points the Motion cherry-picks, the Court made numerous other holdings in its analysis

28  and conclusion that the SAC failed to allege facts giving rise to a strong inference of scienter.

1   (*See* Dismissal Order 17-29.)  Plaintiff fails to explain how, in light of these numerous other

2   unaddressed holdings, one or more of these three points would establish an inference of scienter

3   that a reasonable person would deem "at least as compelling as any opposing inference one could

4   draw." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

5         Plaintiff has failed to satisfy his burden of showing that the "newly discovered evidence"

6   would alter the Court's disposition regarding scienter and defeat a motion to dismiss.  The Motion

7   should thus be denied.

8                    **2.    The "Newly Discovered Evidence" Cannot Establish Loss Causation,
                              as the Information Available to the Market at the Time of the Alleged
9                             Corrective Disclosures Has Not Changed**

10        The Court's detailed analysis examined all five of the SEC filings that Plaintiff alleged

11  and argued were "partial corrective disclosures" and held that they failed to adequately allege loss

12  causation.  (Dismissal Order 29-36.)  The Motion, however, only argues that the "newly

13  discovered evidence" would somehow impact the Court's analysis of one of those five alleged

14  "partial corrective disclosures" – the November 30, 2015 8-K announcing BDO's resignation.

15  (MPA 11-12.)   It is a non-starter to suggest that information made public two years later alters

16  what the market knew in 2015.  The absence of loss causation is an independently sufficient basis

17  for the dismissal with prejudice and judgment in favor of Defendants.

18        Plaintiff argues that the alleged details of BDO's resignation letter rebut the Court's

19  determination that the resignation "was at most 'an ominous event' that 'put[] investors on notice

20  of a <u>potential</u> future disclosure of fraudulent conduct,'" (Dismissal Order 35 (alteration in

21  original) (quoting *Loos*, 762 F.3d at 890)), contending that the new details indicate the market on

22  November 30, 2015 understood the resignation to be a revelation of fraudulent activity, (MPA

23  12).  Plaintiff is wrong.  Loss causation turns on when the truth about an alleged securities fraud

24  became known to the market, meaning it necessarily turns on what information the market had as

25  of the date the plaintiff claims the fraud was revealed.  *See Metzler Inv. GMBH v. Corinthian*

26  *Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008), *as amended* (Aug. 26, 2008) ("[T]he complaint

27  must allege that the defendant's 'share price fell significantly after the truth became known.'"

28  (quoting *Dura Pharm.*, 544 U.S. at 347)).  Here, Plaintiff claims the fraud was revealed on

1    November 30, 2015, but the "newly discovered evidence" does not change what information the

2    market had that day.  Indeed, Plaintiff repeatedly concedes and argues the "newly discovered

3    evidence" was not publicly known or knowable until nearly two years later.  (MPA 5 ("[T]hese

4    new facts, which were previously unavailable to Plaintiff . . . ."), 6 (describing "'newly

5    discovered evidence,' *which was only revealed after dismissal and later in the course of the*

6    *Oswald Derivative Action*" (emphasis in original)), 8 ("The contents of BDO's resignation letter

7    were previously under seal and only revealed by the Court in the *Oswald* Order on October 27,

8    2017.  Thus, prior to the issuance of the *Oswald* Order, Plaintiff had no way of accessing the

9    resignation letter . . . ."), 9-10 (referencing "the new facts uncovered in the course of the *Oswald*

10   Derivative Action[]"), 10 (referencing "[t]hese previously-undisclosed revelations").)  Plaintiff is

11   attempting to have his cake and eat it too, arguing both that the alleged new details were not

12   publicly known until October 27, 2017 and yet that the details indicated to the market on

13   November 30, 2015 that a fraud had been revealed.[5]  Plaintiff cannot have it both ways; his

14   argument necessarily fails.

15          Additionally, the Motion fails to address the Court's critical holding that Plaintiff "failed

16   to show that this disclosure [the November 30, 2015 8-K] and the resultant stock drop, are related

17   to an actual material misrepresentation."  (Dismissal Order 34 (internal quotation marks

18   omitted).)  As already discussed, the Executive Compensation Statements are the material

19   misrepresentations at issue here.  Yet neither the November 30, 2015 8-K announcing BDO's

20   resignation nor the "newly discovered evidence" of the alleged details of BDO's resignation letter

21   revealed that the statements of Hart's executive compensation in those three proxy statements

22   were incorrect.  Plaintiff again conflates the improprieties alleged in the *Oswald* Derivative

23   Action and *Ruggiero* Complaint with the securities fraud he has alleged here.  The Motion does

24   not even attempt to argue that the details of BDO's resignation letter indicated that the proxy

25   statements were inaccurate.  Instead, he argues that it revealed Hart allegedly engaged in

26

27   _____
     [5] The result is even more preposterous if the October 27, 2017 Order itself is contended to be the
     corrective disclosure, as Identiv's stock price *increased* from $3.02 on October 27, 2017 to $3.11

28   on October 30, 2017 (the next trading day) (in addition to the fact the October 27, 2017 Order did
     not reveal a fraud).

1   wrongdoing concerning expense reimbursement and Identiv failed to respond appropriately.  (*See*

2   MPA 12 ("[T]he new evidence confirms that BDO's resignation was, in fact, attributable to

3   wrongdoing by Hart related to his 'improper expenses' in 2013 and 2014, and the subsequent

4   failure by the Special Committee to heed BDO's requests to fully investigate the wrongdoing and

5   take appropriate remedial action.").)  That is not the securities fraud Plaintiff alleged.  Even with

6   the "newly discovered evidence," Plaintiff has not and cannot show that the November 30, 2015

7   8-K related to an actual material misrepresentation.

8        Plaintiff has failed to satisfy his burden of showing that the "newly discovered evidence"

9   would alter the Court's disposition regarding loss causation and defeat a motion to dismiss.  The

10  Motion should thus be denied.

11  **IV.   <u>CONCLUSION</u>**

12       This Motion is a last-ditch effort by Plaintiff to revive his already-dismissed lawsuit.  The

13  Motion is untimely, and the "newly discovered evidence" would not alter the disposition of this

14  case.  To succeed on the Motion, Plaintiff had to establish that the "newly discovered evidence"

15  would alter the Court's decision regarding *both* scienter *and* loss causation and defeat a motion to

16  dismiss.  Plaintiff has failed to establish the "newly discovered evidence" would alter the Court's

17  disposition or defeat a motion to dismiss as to *either* element.  As such, Identiv respectfully

18  requests this Court decline to entertain the Motion and/or deny the Motion in its entirety.

19

20  DATED:  January 17, 2018                     Respectfully submitted,

21                                               PAUL HASTINGS LLP

22

23                                               By:  */s/ Christopher H. McGrath*

24                                                    CHRISTOPHER H. McGRATH

25                                               *Attorneys for Defendant Identiv, Inc.*

26

27

28